United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 23, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Summary Calendar
No. 04-40293
_____

BETESTIA ROBINSON,

Plaintiff-Appellant,

versus

WASTE MANAGEMENT OF TEXAS, doing business as
Texas Waste Management Company,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas, Tyler Division
Civil Action No. 3:02-0059

---

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Appellant Robinson appeals the district court's award of partial summary judgment to Appellee Waste Management of Texas ("Waste Management"). For the reasons discussed below, we AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Background

Waste Management hired Robinson as a "helper" in November 1999. "Helpers" assist the drivers of waste collection trucks by riding along and picking up trash left at the curb by customers. In hopes of higher pay (and most likely a more desirable work experience), Robinson wished to become a driver for Waste Management. After inquiring about this position, Robinson learned that drivers had to have a commercial driver's license and pass a physical examination, including a drug test. However, internal policy changes within Waste Management later added the requirement of one year's experience for all driver applicants. Robinson does not dispute the fact of this policy change.

Robinson asserts that she spoke to her immediate supervisor, Jason Stephens, numerous times about being promoted to driver. According to Robinson, Stephens routinely promised that he would schedule Robinson for the requisite physical examination, but never actually did so. Robinson's threats to report Stephens to his superiors were allegedly met with threats from Stephens that he would inform authorities of instances when Robinson failed to appear at work without a valid excuse. Robinson also states that several male employees were scheduled for and received physical examinations promptly after being hired, and were authorized to work as drivers even without the requisite year of experience. Understandably, Robinson was very upset by this course of events.

2

However, before ever formally applying for a driver position, Robinson confronted Stephens and told him she was going to quit because she suffered discrimination in seeking the driver position. She then quit her position at Waste Management and, after completing the EEOC administrative process, filed suit.

On November 27, 2002, Robinson sued Waste Management, alleging that her former employer violated Title VII of the Civil Rights Act of 1964 through gender discrimination and constructive discharge. Waste Management moved for summary judgment on both claims. On September 18, 2003, the district court awarded summary judgment to Waste Management on the constructive discharge claim, but denied the motion as to the gender discrimination claim. The jury returned a verdict in favor of the plaintiff. After clerical errors were corrected, judgment was entered in Robinson's favor for $54,096 for past lost income from the date of the adverse action to resignation. The court then granted Waste Management's motion for judgment notwithstanding the verdict. Final judgment awarded Robinson $1,056. She then appealed the summary judgment award to this court.[1]

II. Constructive Discharge Claim

We review a district court's summary judgment decision de novo, using the same standard as that court. See Gowesky v.

---

[1] Robinson does not challenge the award of judgment notwithstanding the verdict to Waste Management, so that claim is waived and we do not address it. See N.W. Enters. Inc. v. City of Houston, 352 F.3d 162, 183 n.24 (5th Cir. 2003).

<u>Singing River Hosp. Sys.</u>, 321 F.3d 503, 506 (5th Cir. 2003); FED. R. CIV. P. 56.

Under Title VII, a resignation is actionable only where that resignation amounts to constructive discharge. <u>See</u> <u>Brown v. Kinney Shoe Corp.</u>, 237 F.3d 556, 566 (5th Cir. 2001). Demonstrating constructive discharge imposes a high burden. To carry this burden, the plaintiff "must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." <u>Faruki v. Parsons</u>, 123 F.3d 315, 319 (5th Cir. 1997). This approach comports with precedent and this court's long-held policy view that "society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships." <u>Boze v. Branstetter</u>, 912 F.2d 801, 805 (5th Cir. 1990) (quoting <u>Bourque v. Powell Elec. Mfg. Co.</u>, 617 F.2d 61, 66 (5th Cir. 1980)).

In the constructive discharge inquiry, the court examines the working environment as a whole, and, to find for the plaintiff, must conclude that the resignation was reasonable under all the circumstances. <u>Barrow v. New Orleans S.S. Ass'n</u>, 10 F.3d 292, 297 (5th Cir. 1994). This holistic review of the workplace takes into account only the specific conditions imposed by the employer; the subjective state of mind of the employee is irrelevant. <u>See</u> <u>Epps v. NCNB Tex.</u>, 7 F.3d 44, 46 (5th Cir. 1993). More specifically, this court looks to seven factors to help determine whether a

4

reasonable employee in the plaintiff's shoes would feel compelled to resign: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation;[2] and (7) offers of early retirement that would make the employee worse off regardless whether the offer is accepted.  See Barrow, 10 F.3d at 297.

Considering the facts presented by Robinson at the summary judgment stage,[3] we conclude that the district court properly awarded judgment to Waste Management as to this claim. Assuming the truth of Robinson's allegations about the conduct of Stephens and the company's willingness to hire males who had not met the one year work experience requirement, she still cannot meet the high bar required to prove constructive discharge.  In her depositions, Robinson conceded that she quit because she was frustrated at not obtaining the promotion to driver.  Additionally, Robinson never formally applied for the job.  Without officially

---

[2]    With respect to this factor, we have held that proving constructive discharge requires a greater degree of harassment than that required by a hostile work environment claim.  See Brown v. Kinney Shoes, 237 F.3d at 566.

[3]    Robinson repeatedly cites to evidence produced at trial in her brief. This, of course, is wholly beyond the scope of our review of a summary judgment motion.  See Guillory v. Domtar Indus. Inc., 95 F.3d 1320, 1327 (5th Cir. 1996) ("Our review of a granted motion for summary judgment is limited to the evidence available to the district court at the time it ruled on the motion."); 7547 Corporation v. Parker & Parsley Development Partners, L.P., 38 F.3d 211, 220 (5th Cir. 1994) ("In reviewing a grant of summary judgment to determine whether the law was applied correctly, this court only considers papers that were before the trial court." (quoting Topalian v. Ehrman, 954 F.2d 1125, 1131-32 n.10 (5th Cir. 1992))).

5

seeking the position which she was supposedly denied, neither Robinson nor this court has any way of knowing whether Waste Management ever intended to deny her the promotion based on her gender. Furthermore, Robinson declined to pursue other avenues to lodge complaints about her supervisor. A reasonable employee would, at the very least, formally seek the position before resigning, or at least seek to remedy the situation with the employer.

Additionally, Robinson alleges only 1 of the 7 factors used in the constructive discharge analysis. Prong 6 — the "humiliation factor" — is certainly alleged (and reflects poorly on Waste Management if true), but falls far short of the legal standard for demonstrating constructive discharge. Numerous cases in this circuit have held that even repeated denials of promotions do not, in and of themselves, demonstrate that a reasonable employee would feel compelled to resign. See, e.g., Brown v. Kinney Shoe Corp., 237 F.3d at 566; Landgraf v. USI Film Products, 968 F.2d 427, 429-30 (5th Cir. 1992). Robinson's allegations as to gender harassment inform, but are not dispositive to, this inquiry, which is limited solely to whether a reasonable employee would feel compelled to resign if she were in Robinson's shoes. Cf. Landgraf, 968 F.2d at 429 (concluding that even where evidence is sufficient to prove sexual harassment and a hostile work environment, plaintiff had been unable to prove constructive discharge). However, assuming the alleged threats by Jason Stephens took place,

these incidents are not sufficient to make out a constructive discharge claim. Cf. Webb v. Cardiothoracic Assocs. of North Texas, P.A., 139 F.3d 532,539-40 (5th Cir. 1998) (affirming an award of summary judgment to the employer on a constructive discharge claim, in spite of the alleged fact that the plaintiff was harassed, demeaned, and publicly humiliated by a supervisor). Furthermore, Robinson has not put forward sufficient evidence to demonstrate that her boss's actions were calculated to encourage her resignation.

For all of these reasons, the judgment of the district court is **AFFIRMED**.